**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Atyaf H.,[1]

Plaintiff,

v.

Frank Bisignano,
*Commissioner of Social Security Administration*,

Defendant.

Case No. 25-cv-4004 (DJF)

**ORDER**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Atyaf H. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") June 10, 2025 decision denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Decision"). Plaintiff challenges the Administrative Law Judge's ("ALJ") evaluation of her residual functional capacity ("RFC"). She specifically contests: (1.) the ALJ's analysis of the opinions of Plaintiff's treating psychologist, Dr. Ronald Odden, regarding Plaintiff's mental capacity to maintain concentration and attention; and (2.) the ALJ's evaluation Plaintiff's pain complaints with respect to Plaintiff's ability to handle, finger, and feel. Plaintiff asks the Court to vacate and reverse the Decision, or in the alternative, remand this matter to the Commissioner for a new hearing. (ECF No. 1.) The Commissioner asks that the Decision be affirmed in its entirety. (ECF No. 13.) The parties consented to the exercise of authority by the United States Magistrate

[1] This District has adopted a policy of using only the first name and last initial of any non-governmental parties in orders in Social Security matters.

Judge pursuant to 28 U.S.C. § 636(c). This matter is before the Court on the parties' briefs. For the reasons given below, the Court affirms the Commissioner's Decision.

## BACKGROUND

### I. Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that she is not engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). The claimant must establish at step two that she has a severe, medically determinable impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404,

Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). 20 C.F.R. § 416.920(a)(4)(iii).[2] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing her RFC and proving that she cannot perform any past relevant work. 20 C.F.R. § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

## II. Relevant Procedural History

On February 16, 2018, Plaintiff protectively filed a new application for SSI alleging disability beginning February 16, 2018. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 355-65.) At that time, she was a 43-year-old woman. (R. 26.) Her claims were denied initially on July 10, 2018, and upon reconsideration on July 14, 2020. (R. 66, 78.) A hearing was held before an ALJ on May 5, 2022 and May 12, 2022. (R. 82.) An attorney represented Plaintiff during the hearing, and Plaintiff and a vocational expert ("VE") testified. After the hearing, the ALJ issued a decision finding Plaintiff not disabled on June 16, 2022. (R. 79-101.) Plaintiff appealed to the Appeals Council, but she was not successful. (R. 102-107.)

Plaintiff then filed suit in the U.S. District Court for the District of Minnesota. *Atyaf H. v. O'Malley*, No. 23-cv-1735 (DJF). Before the Court could address Plaintiff's claim on the merits,

[2] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R. Part 404, Subpart P, App. 1.

the parties filed a joint stipulation to remand it to the Commissioner for a supplemental hearing and further administrative action pursuant to sentence 4 of 42 U.S.C. § 405(g). *Id*. (ECF No. 16). The Court approved the stipulation and filed a remand order on January 26, 2024. *Id*. (ECF Nos. 18, 19).

The same ALJ conducted a second hearing on May 8, 2025. (R. 4.) An attorney represented Plaintiff during the hearing, and Plaintiff and a VE testified. (R. 39-65, 618-651, 652-663.) After the hearing, the ALJ considered whether Plaintiff was disabled from February 16, 2018, the alleged disability onset date, through June 10, 2025. On June 10, 2025, the ALJ issued the Decision now under review before this Court, again finding Plaintiff not disabled. (R. 1-38.)

The ALJ determined at step one of the sequential analysis that Plaintiff had not engaged in any substantial gainful activity since her alleged disability onset date. (R. 7.) At step two, the ALJ found Plaintiff had the following severe impairments: fibromyalgia; degenerative disc disease, cervical and lumbar spine; chronic pain disorder; neuropathy; conductive hearing loss, right ear; sensorineural hearing loss, left ear; arthritis, right knee; atrial fibrillation; major depressive disorder; an adjustment disorder; panic disorder; post-traumatic stress disorder; and generalized anxiety disorder. (R. 7-9.) At step three, the ALJ concluded that none of Plaintiff's impairments individually or collectively met or medically equaled any impairment in the Listing. (R. 9-12.)

The ALJ then determined Plaintiff's RFC. She stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is able to lift and/or carry 20 pounds occasionally, 10 pounds frequently, stand or walk up to 6 hours in an 8-hour work day, sit up to 6 hours in an 8-hour work day. The claimant can occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, crawl. The claimant should not be exposed to loud noise as defined in the SCO. The claimant is limited to working in a moderate, quiet, or very quiet noise setting environment as defined by the SCO. The claimant is able to understand, remember, and carry out simple and detailed

> tasks, but not complex tasks. The claimant can perform work without a specific rate pace such as assembly line work. The claimant is limited to occasional interaction with the public, coworkers, supervisors. The claimant is able to adapt to occasional changes in a routine work setting.

(R. 12.) In reaching this determination, the ALJ reviewed the record in detail, taking into consideration the medical opinions in the record; Plaintiff's medical testing, examination and treatment history; Plaintiff's testimony regarding her symptoms; and Plaintiff's activities of daily living. (R. 12-26.)

After determining Plaintiff's RFC, the ALJ found at step four of the sequential analysis that Plaintiff has no past relevant work. (R. 26.) Relying on the VE's testimony, however, she then found at step five that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: marker (DOT# 209.587-034), light, unskilled, SVP 2, with 53,500 jobs nationally; routing clerk (DOT# 222.687-022), light, unskilled, SVP 2, with 60,410 jobs nationally; and bagger (DOT# 920.687-018), light, unskilled, SVP 2, with 106,000 jobs nationally). (R. 27.) The ALJ noted that all these jobs are light, unskilled positions at the SVP-2 skill level. (*Id.*) Based on these findings, the ALJ concluded Plaintiff was not disabled. (R. 28.)

## DISCUSSION

### I. Standard of Review

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol.*

*Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* But a court determining whether evidence is substantial must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At a minimum, the ALJ must build a logical bridge between the evidence and the RFC she creates. She does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II. Medical Opinions

Plaintiff challenges the Decision on the ground that the ALJ's RFC determination erroneously failed to account for limitations related to Plaintiff's ability to maintain concentration and attention. Plaintiff contends this omission was due to the ALJ's inadequate review of Dr. Odden's opinions from 2018, 2020, and 2025.[3] (*See* ECF No. 12 at 3-9.)

### A. The ALJ's Decision

At step three of the sequential analysis, the ALJ discussed Plaintiff's ability to concentrate and persist or maintain pace, and concluded Plaintiff has a moderate limitation in these areas of mental functioning. (R. 11.) In reaching this determination, the ALJ discussed Dr. Odden's treatment notes, which document Plaintiff's reports of excessive worrying, racing thoughts, and panic attacks, as well as her reports of experiencing low energy and low motivation, which the ALJ found "would reasonably interfere with her ability to persist". (R. 11, citing R. 3175.) The ALJ also considered Dr. Odden's April 26, 2022 Mental Residual Functional Capacity Assessment of Plaintiff, which indicated that Plaintiff experiences difficulty concentrating for extended periods and carrying out instructions and tasks that are detailed or complex. (R. 11, citing R. 1643.) However, the ALJ noted that Plaintiff's treating medical providers, including Dr. Odden, have consistently documented her as presenting with attention and concentration

[3] Plaintiff also asserts that "the ALJ neglected to make any findings whatsoever regarding [her] ability to maintain concentration and attention (i.e., focus)." (ECF No. 12 at 4.) This claim plainly misrepresents the Decision, which discusses the ALJ's findings regarding Plaintiff's ability to maintain concentration at length. (*See* R. 11, finding, with regard to concentrating, persisting or maintaining pace, that Plaintiff has "a moderate limitation"; *see also* R. 12, limiting Plaintiff's RFC to preclude work requiring a high degree of concentration and focus, such as assembly line and other rate pace work; R. 20-26, discussing Plaintiff's ability to concentrate at various points throughout the analysis of Plaintiff's RFC.)

within normal limits. (R. 11, citing, e.g., R. 1169, 1258, 1479, 2218.) The ALJ thus concluded the evidence does not support greater than a moderate limitation in this area. (R. 11.)

At step four of the sequential analysis, the ALJ reviewed and evaluated Dr. Odden's opinions from 2018, 2022, and 2025. (R. 21-24.) In 2018, Dr. Odden served as the psychological consultative examiner for Plaintiff. (*See* R. 1165-72.) At that time, he did not have a treatment relationship with her. (*See* R. 21.) Following a psychological examination of Plaintiff on June 11, 2018, Dr. Odden found that Plaintiff was mildly depressed and had some symptoms of panic disorder. (R. 1169.) After conducting cognitive tests, he further found that her "attention span appeared to be average." (*Id.*) He determined that she was able to understand, remember, and follow instructions for two to three-step tasks; was able to focus for one to two hours at a time; had average pace on tasks; was typically able to complete the few duties she initiated on a given day; would have no difficulty getting along with coworkers and supervisors in a typical entry level job; and could experience some increased anxiety with the stress and pressure found in a typical entry-level job. (R. 1170.) The ALJ did not find this opinion to be persuasive. (R. 21.) In reaching that determination, the ALJ noted that the 2018 opinion was based on a single consultative examination. (*Id.*) She found that though the opinion was consistent with the examination, it was not fully consistent with later-generated medical evidence documenting Plaintiff as presenting with frequent mood disturbances and intermittently fair judgment and insight, but as otherwise: consistently alert, oriented, adequately groomed, and cooperative; with consistently unremarkable behavior; with thought processes, thought content, memory, attention, and concentration all consistently within normal limits; and with frequently intact judgment and insight. (*Id*. citing R. 1168-1169.)

Having rejected Dr. Odden's 2018 opinion, the ALJ then discussed Dr. Odden's 2022 opinions. (R. 21-23.) By that time, Dr. Odden had become one of Plaintiff's treating mental health providers. Dr. Odden's 2022 opinions include a Psychiatric Review Technique evaluation that found, among other things, that Plaintiff has "a marked limitation in maintaining concentration, persistence, and pace." (R. 1637.) The ALJ did not find this opinion to be persuasive. She reasoned that the opinion was not supported by or consistent with other treatment notes of record, including those documenting Plaintiff's attention and concentration consistently as being within normal limits. (R. 21-22, citing R. 1169, 1258, 1495, 1810, 2218, 2510, 2903, 3135, 3729.)

The ALJ also found Dr. Odden's 2022 Mental Residual Functional Capacity Assessment largely unpersuasive. (R. 22, citing R. 1641-43 ("2022 Assessment").) The assessment included findings that Plaintiff has markedly limited ability to understand and remember detailed instructions; to maintain attention and concentration for extended periods; to complete a workday without interruptions from psychologically-based symptoms; to interact appropriately with the public; to respond appropriately to work setting changes; and to set realistic goals or make independent plans. (R. 1641-1642.) The assessment further indicated that Plaintiff has moderate ability to carry out detailed instructions; to perform to a schedule; to work with or around others without being distracted by them; to make simple work-related decisions; to ask for assistance; and to get along appropriately with coworkers. (R. 1641-1643.) The assessment found Plaintiff has no significant limitations in remembering work-like procedures; in understanding, remembering, and carrying out very short and simple instructions; in sustaining a routine without special supervision; in responding appropriately to supervisory interactions; in maintaining socially appropriate behaviors; in adhering to basic standards of neatness and cleanliness; in

taking hazard precautions; or in traveling to unfamiliar places or using public transportation. (R. 1641-1642.) The ALJ did not find this part of the assessment to be persuasive, reasoning that it was inconsistent with the treatment notes of record, including notes from Dr. Odden finding her "memory, attention, and concentration all consistently within normal limits." (R. 22, citing R. 1169, 1258, 1495, 1810, 2218, 2510, 2903, 3135, 3729.)

The 2022 Assessment concluded with a narrative summary stating that, though Plaintiff has no difficulty with simple instructions and simple routine activities, she becomes overwhelmed as instructions become more complex and detailed. (R. 1643, "Her concentration becomes worse as the tasks become more challenging for her.") Dr. Odden stated that Plaintiff's anxiety intermittently interferes with her ability to make even simple decisions, to attend work regularly, to interact with others she does not know, to ask for assistance, and deal with changes in work situations, and that as a result, Plaintiff "would have difficulty keeping a normal work day/work week." (*Id.*) The ALJ found Dr. Odden's statement to be persuasive only insofar as it indicates, as a general proposition, that Plaintiff's "anxiety increases as tasks become more complex and that this increased anxiety can affect her ability to concentrate." (R. 22-23.) However, she rejected the remaining portion of the statement as vague and not fully consistent with the treatment notes in the record reflecting that Plaintiff's "thought content, memory, attention, and concentration" were all "consistently within normal limits" (*id.*, citing R. 1169, 1258, 1495, 1810, 2218, 2510, 2903, 3135, 3729), and further documenting that Plaintiff cared for her child, cared for a spouse with significant health issues, drove across town as often as daily to assist her father with Alzheimer's disease, and ran errands for others in her local community (*id.*, citing 1559, 1625, 3179, 3201, 3221, 3232, 3740, 3758).

The ALJ next considered Dr. Odden's 2025 Mental Residual Functional Capacity Assessment. (R. 23-24, citing R. 4032-34 ("2025 Assessment").) Dr. Odden's 2025 Assessment differed significantly from his 2022 Assessment. In 2025, he found that Plaintiff was "markedly limited", as opposed to "moderately limited" or "not significantly limited" in her ability to: carry out detailed instructions; perform to a schedule; work with or around others without being distracted by them; respond appropriately to supervisory interactions; and get along appropriately with coworkers. (R. 4032-33.) He further found that she was a least "moderately limited", as opposed to "not significantly limited" in her ability to sustain a routine without special supervision and take hazard precautions. (*Id.*) However, he rated her as less limited in 2025 than he had in 2022 in her ability to make simple work-related decisions and ask for assistance. Dr. Odden's 2025 Assessment concluded with a narrative summary stating that Plaintiff's anxiety sometimes overwhelms her. (R. 4034.) He stated that she struggles to learn and remember complex instructions, that "she is easily distracted by things or people around her," and that "any negative feedback from supervisors is devastating" to her and leads to an "inability to function." (*Id.*)

The ALJ carefully reviewed the 2025 Assessment but ultimately did not find it persuasive. (R. 23.) In particular, the ALJ found Dr. Odden's opinion inconsistent with the treatment notes of record, including those documenting Plaintiff's attention and concentration consistently within normal limits.[4] (*Id.* citing R. 1169, 1258, 1495, 1810, 2218, 2510, 2903, 3135, 3729.) The ALJ also found Dr. Odden's opinion both inconsistent with Plaintiff's course of treatment (*id.*, citing

[4] Plaintiff argues the ALJ erred in finding Dr. Odden's 2025 Assessment inconsistent with his own treatment notes (R. 23) without specifying how it is inconsistent. (*See* ECF No. 12 at 5.) However, in making this comparison, Decision specifically pointed to Dr. Odden's 2018 opinion, which found Plaintiff's "attention span appeared to be average." (*See* R. 23, citing R. 1169 among other parts of the record.) Thus, Court has no difficulty following the ALJ's analysis.

R. 1551-62 and 2505-11), and inconsistent with the above-described activities of daily living caring for her child, her husband, her father and community members (*id*., citing R. 1559, 1625, 3179, 3201, 3221, 3232, 3740, 3758). The ALJ further found the opinion speculative insofar as it describes Plaintiff's inability to handle supervisory feedback, given that she has never worked in any formal employment of record. (*Id.* citing R. 409, 411-412.)

Finally, the ALJ considered a Psychiatric Review Technique evaluation Dr. Odden conducted in 2025, which indicated that Plaintiff has: a marked limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a marked limitation in concentration, persistence, and maintaining pace; and a marked limitation in adapting or managing oneself. (*Id.* citing R. 4048.) The ALJ found this opinion was vague and not fully consistent with the treatment notes of record, including those documenting Plaintiff's attention and concentration consistently as within normal limits. (R. 23-24 citing R. 1169, 1258, 1495, 1810, 2218, 2510, 2903, 3135, 3729.) For these reasons, the ALJ did not find this opinion to be persuasive. (R. 24.)

**B. Legal Analysis**

In evaluating an ALJ's analysis of medical opinions, a court is limited to considering whether the ALJ complied with the Social Security Administration's regulations that prescribe how the analysis should be conducted. *See Cropper v. Dudek*, 136 F.4th 809, 814 (8th Cir. 2025). The ALJ is required to evaluate medical opinions pursuant to 20 C.F.R. § 416.920c. When considering medical opinions and prior administrative medical findings, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, the applicable regulations provide that an

ALJ must evaluate medical opinions and prior administrative medical findings based on several enumerated factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's area of specialization; and (5) "other factors", including the medical source's familiarity with other evidence in the claim or understanding of Social Security Program policies, and whether new evidence came to light after the medical opinion was provided. 20 C.F.R. § 416.920c(c).

The most important factors, when determining how persuasive a medical opinion or finding is, are supportability and consistency. 20 C.F.R. § 416.920c(a), (b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). An ALJ must explain how she considered and evaluated both the consistency and supportability factors, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 416.920c(b)(2). Additionally, the ALJ "is not required to identify each and every scrap of evidence that supports or detracts from the medical opinions, but she must at least set forth reasoning 'clear enough to allow for appropriate judicial review.'" *Erik J. v. Bisignano*, No. 25-cv-2515 (SGE), 2026 WL 1724860, at *3 (D. Minn. June 15, 2026) (quoting *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021)). "[A]n ALJ need not adopt a medical expert's opinion in full, even if she finds the opinion persuasive." *Corliss K. v. Bisignano*, No. 24-cv-3707 (KMM/JFD), 2025 WL 2742441, at *4 (D.

Minn. July 22, 2025), *report and recommendation adopted*, 2025 WL 2691884 (D. Minn. Sept. 22, 2025) (citing *Julie P. v. O'Malley*, No. 23-cv-2980 (LMP/ECW), 2024 WL 4880375, at *2 (D. Minn. Nov. 25, 2024)). Rather, it is the ALJ's prerogative to balance the weight of each medical opinion she reviews against the other evidence in the record. *See id.*

Here, the ALJ thoroughly reviewed Dr. Odden's medical statements and opinions from 2018, 2022, and 2025 and appropriately followed the guidance of 20 C.F.R. § 416.920c in evaluating the persuasiveness of each. The ALJ specifically discussed and adequately articulated supportability and consistency as to Dr. Odden's opinions by comparing his overall opinions to Plaintiff's medical records and citing in detail specific pages of the medical records that were inconsistent with Dr. Odden's medical statements and opinions. The ALJ found the consistency of Dr. Odden's opinions with the overall medical evidence further undermined by Plaintiff's own reports of caring for her child, caring a spouse with significant health issues, driving across town as often as daily to assist her father with Alzheimer's disease, and running errands for others in her local community. The ALJ also discussed the supportability of Dr. Odden's opinions by discussing and citing his own treatment notes of record, which did not support his conclusions.

In challenging the ALJ's findings, Plaintiff relies heavily on the opinions of Dr. Odden and another psychological examiner, Dr. Scott Ressler, whom the ALJ also found to be unpersuasive. (*See* ECF No. 12 at 8-9; *see also* R. 24, finding Dr. Ressler's opinion unpersuasive because it was vague, inconsistent with other evidence in the record, and improperly took Plaintiff's linguistic ability into consideration.) But Plaintiff asserts no plausible argument that the ALJ erred in assessing these opinions by failing to follow the requirements of 20 C.F.R. § 416.920c. Instead, Plaintiff points to portions of the opinions and argues they are supported and consistent with the record. (*See* ECF No. 12 at 8.) This argument amounts to an improper request that the Court

reweigh the medical opinion evidence. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *see also Ross v. O'Malley*, 92 F.4th 775, 779 (8th Cir. 2024) ("We will only disturb the ALJ's decision if it falls outside the available zone of choice.") (quotation omitted). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). An ALJ's decision "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id*.

Here, the ALJ's consideration of Dr. Odden's opinions in assessing her RFC, and in particular his opinions regarding her ability to maintain concentration and attention, were within the zone of choice. Because the ALJ's analysis was not legally erroneous, the Court concludes this claim does not warrant reversal or remand.

## III. Subjective Complaints of Pain

Plaintiff further challenges the ALJ's Decision at step four on the ground that the ALJ did not properly consider Plaintiff's pain complaints. Plaintiff contends this failure resulted in a faulty RFC assessment of her ability to handle, finger, and feel. (ECF No. 12 at 9-12.)

Congress expressly prohibits granting disability benefits based entirely on a claimant's subjective complaints. *See* 20 C.F.R. § 416.929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."). "When evaluating the claimant's subjective complaints, the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the *Polaski* factors: (i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii)

precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions." *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)); *see also* 20 C.F.R. § 416.929(c). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). "The ALJ is not required to discuss each *Polaski* factor as long as '[s]he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)).

The ALJ conducted the required analysis, supported her conclusion with sound reasons and substantial evidence and considered the relevant *Polaski* factors when discussing Plaintiff's subjective complaints. Regarding Plaintiff's pain complaints and her ability to handle, finger, and feel, the ALJ discussed Plaintiff's daily activities (R. 18-19, noting that Plaintiff had socialized with family outside her residence; travelled to a distant state to visit relatives; cared for her child and her husband, whom she reported has significant health issues affecting his legs; drove across town on up to a daily basis to assist her father, whom she reported has Alzheimer's disease; ran errands for others in her local community; and looked for work); diagnoses (R. 13, 15-17); work history (R. 19, noting no record of Plaintiff having worked in formal employment); the severity of her conditions (R. 15, noting Plaintiff had presented on isolated occasions with objectively decreased vibratory sensation in her thumbs and endorsed wrist pain, which her medical providers indicated is likely secondary to the fibromyalgia); the effectiveness of treatment (R. 15, noting that Plaintiff's providers prescribed wrist braces, which she has occasionally worn to appointments on one or both wrists, and have prescribed a regimen of

prescription medication, to which Plaintiff reported her neuropathic symptoms are responsive; that Plaintiff has been offered targeted steroid injections in her thumbs, which she declined; and that Plaintiff has been referred to multiple courses of physical and aquatic therapy, which Plaintiff reports generally provide gradual improvement in her symptoms, but which she has not attended consistently); and functional restrictions (R. 19-21, considering and adopting functional restrictions).

The ALJ further concluded that the objective medical evidence is not completely consistent with Plaintiff's allegations regarding the intensity, frequency, or persistence of the limiting effects of her physical impairments. (R. 18.) The ALJ pointed to medical providers that have repeatedly noted Plaintiff's subjective reports of symptoms are out of proportion to the objective clinical findings. (*Id.*) The ALJ further considered Plaintiff's inconsistent attendance at follow-up appointments, refusals to pursue recommended treatment options and testing, and inconsistent compliance with prescribed treatment. (*Id.*)

The ALJ also discussed a number of inconsistencies in the evidence concerning Plaintiff's daily activities. For example, Plaintiff reported in her early function report that she was able to prepare simple foods and able to prepare full meals with assistance (R. 469, 1168), but she indicated in her most recent function report that she does not cook (R. 569). Plaintiff also reported in her earlier function reports that she is able to drive (*see, e.g.*, R. 470, 1168), however, she stated in her most recent function reports and at the hearing that she no longer does so (R. 570; *see also* R. 39-65). Plaintiff further indicated in her earlier function reports that she would spend her days reading, watching television, helping her child with homework, socializing with family, attending appointments, and occasionally performing light household cleaning tasks such as laundry (*see* R. 433-434, 436; R. 468-469, 471; *see also, e.g.*, R. 1168), but she indicated in her most recent

function reports that she typically spends her days in bed, occasionally being taken to medical appointments, occasionally being taken shopping, and occasionally reading or socializing with family members by telephone (R. 551-552, 554, 568-569, 571). Plaintiff brief does not identify any record evidence explaining these inconsistencies. Moreover, the ALJ pointed out that the treatment notes document Plaintiff reporting she engages in other activities, including: socializing with family outside her residence, traveling to a distant state to visit relatives, caring for her child, caring for her husband with significant health issues, driving across town on up to a daily basis to assist her father with Alzheimer's disease, running errands for others in her local community, and looking for work. (R. 22-23 citing 1619, 1591, 1559, 1625, 3179, 3201, 3221, 3232, 3740, 3758, 3241.) In light of this record, the ALJ found Plaintiff's activities of daily living inconsistent with a conclusion that there is no work she is able to perform.

Because the ALJ properly considered Plaintiff's subjective complaints of pain as well as the evidence undermining those reports, weighed that evidence, and arrived at a conclusion that is supported by substantial evidence, the Court cannot find a material deficiency in her analysis. The Court will not reweigh the evidence. *See Nicole W. v. Kijakazi*, No. 20-cv-2697 (SRN/BRT), 2022 WL 3047088, at *5 (D. Minn. July 14, 2022); *see also Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022) ("Despite [Plaintiff's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence"). The Court further concludes that substantial evidence in the record supports the ALJ's consideration of Plaintiff's allegations of pain with respect to the RFC determination. *See, e.g.*, *Schlemmer v. Berryhill*, No. 16-cv-2157 (SER), 2017 WL 4898520, at *4 (D. Minn. Aug. 8, 2017) (finding substantial evidence supported ALJ's decision based on plaintiff's daily activities, work history, and medication).

For the above-stated reasons, the Court concludes that Plaintiff's clearly asserted assignments of error do not warrant reversal or remand. The Court pauses to note that Plaintiff's briefing includes vague references to possible arguments that are neither clearly asserted nor adequately supported with citations to the record and relevant case law. To the extent Plaintiff seeks to challenge any portion of the ALJ's Decision on grounds other than those addressed in the foregoing analysis, those challenges are rejected as insufficiently raised.

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Request for Relief (ECF No. 12) is **DENIED**;
2. Defendant's Request for Relief (ECF No. 13) is **GRANTED**;
3. The Decision is **AFFRIMED**; and
4. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 29, 2026

*s/ Dulce J. Foster*
DULCE J. FOSTER
United States Magistrate Judge